UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN LANHAM-HARRIS,

    Plaintiff,

vs.                                         Case No. 8:04-cv-904-T-MSS

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying claims for disability and supplemental security income under the Act.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

I.     Background

    A.     Procedural History

Plaintiff protectively filed an application for disability and supplemental security income on March 27, 2001. (T. 51-53.) Plaintiff alleged an onset of disability on May 15, 2001, due to depression, arthritis in her hips and shoulders, tendinitis in her left knee and ankle, degenerative disc disease, low back and neck problems, and spondylosis. (T. 51, 59.) Her application was denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on January 29, 2003, before Administrative Law Judge Manuel Rodriguez (hereinafter referred to as the "ALJ"). (T. 302-321.) In a decision dated June 17, 2003, the ALJ denied Plaintiff's claims for benefits. (T. 12-18.) The Appeals Council denied review of the decision on March 25, 2004. (T. 3-5.) This action for judicial review ensued.

    B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision. By way of summary, Plaintiff complained of a history of tendinitis, pain in her neck, hip, back and shoulder, degenerative disc disease, spondylosis, numbness in her shoulder, fingers, leg, and foot, depression, memory difficulties and headaches.

At the hearing, the Plaintiff presented the ALJ with medical records from Plaintiff's treating and examining physicians. After considering the evidence, the ALJ found that although Plaintiff suffered from severe impairments including a remote right hip fracture, degenerative disc disease of the lumbar spine, cervical

2

spondylosis, and a history of tendinitis, she did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (T. 14, 17-18.)

The ALJ found the Plaintiff's allegations of incapacitating pain and disabling impairments were not fully credible.  (T. 15-16, 18.)  The ALJ determined Plaintiff had the residual functional capacity for light work, including lifting 20 pounds occasionally and 10 pounds frequently and sitting, standing and/or walking about 6 hours in an 8-hour day.  Applying the grids, the ALJ found the existence of a significant number of jobs in the economy Plaintiff could do despite her limitations.  The ALJ therefore concluded Plaintiff was not disabled under the Act.  (T. 16-18.)

Plaintiff contends that the decision of the ALJ must be reversed and remanded for further hearing due to the following reasons: (1) the ALJ erred in failing to give proper weight to the opinion of Plaintiff's treating physician; (2) the ALJ failed to consider Plaintiff's impairments in combination; and (3) the ALJ erred in applying the grids and failing to elicit the testimony of a vocational expert.

For the reasons that follow, the Undersigned AFFIRMS the decision of the Commissioner.

II.     Standard of Review

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. McDaniel v. Bowen, 800 F.2d 1026, 1029-30 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. Jamison v. Bowen, 814 F.2d 585 (11th Cir. 1987).

III.   Discussion

    A.   WHETHER THE ALJ ERRED IN FAILING TO GIVE GREAT WEIGHT TO THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN, DR. SPRINGSTEAD.

Plaintiff first contends that the ALJ erred in failing to give great weight to the opinion of Plaintiff's treating physician, Dr. Springstead. The Commissioner argues that Dr. Springstead's opinion that Plaintiff could not work an 8-hour day was not entitled to special deference because that is an issue reserved for the Commissioner. The Commissioner further argues that there was good cause to discount Dr. Springstead's opinion because his opinion is inconsistent with other substantial evidence of record.

The controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Furthermore, that good cause finding must be set forth expressly on the face of the ALJ's opinion. "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)(citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986). The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision. Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb, 847

5

F.2d at 703 ("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.")  Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician.  Johns v. Bowen, 821 F.2d 551 (11th Cir.1987).  This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Dr. Springstead first began treating Plaintiff in 1987 when she had surgery to repair her fractured and dislocated right hip.  Plaintiff returned for treatment in 1992 and then again in 1994.  From 1994, Dr. Springstead continued to treat Plaintiff through September 2002.  (T. 138-160, 186-87, 193-95.)  In July 2002, Dr. Springstead completed a Physical Capacities Evaluation.  He opined that Plaintiff could sit a total of 4 hours and stand and/or walk a total of 2 hours in an 8-hour workday.  Dr. Springstead further opined that the option to change positions would not make it possible for Plaintiff to work an 8-hour workday.  He opined she could occasionally lift and carry up to 10 pounds.  She could not use foot controls.  She could occasionally bend and reach and should not be around unprotected heights and moving machinery.  (T. 189-91.)  Dr. Springstead explained that Plaintiff's

capacities and restrictions were based on her degenerative disc disease, chronic back pain, chronic cervical strain and a history of a dislocated right hip. (T. 191.) He further opined that her medical conditions could reasonably be expected to produce the subjective symptoms of the nature and severity alleged by Plaintiff. (Id.)

The ALJ recognized Dr. Springstead's July 2001 physical capacity evaluation of Plaintiff. The ALJ, however, did not give controlling weight to the opinion. The ALJ explained as follows:

> In regards to Dr. Springstead's opinion, the undersigned has considered it but does not give it controlling weight, as it is inconsistent with Dr. Springstead's office visit notes and other objective medical evidence. None of the limitations given by Dr. Springstead are noted in the office notes. As noted by Dr. Springstead the claimant has good range of motion of the hips. There is no evidence of motor deficits. The record shows that the claimant's symptoms are treated conservatively and there is no indication that more aggressive treatment is needed. Dr. Springstead's opinion was considered but it is not given controlling weight.

(T. 16.)

Upon a review of the record, the Court finds that the ALJ had good cause to reject Dr. Springstead's opinion. First, the Commissioner correctly points out the responsibility of determining whether a claimant is disabled lies with the Commissioner. See 20 C.F.R. §§ 416.927(e)(1) (the Commissioner is responsible "for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability. . . ."); SSR 96-5P. Furthermore, "treating source opinions on issues that are reserved to the Commissioner are never entitled to

controlling weight or special significance." Id.

Second, the ALJ may reject any physician's opinion when the evidence supports a contrary finding. Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir.1987). Additionally, good cause exists to reject a treating physician's opinion when the physician's opinion is inconsistent with his own treatment records or when the physician's statement "contains no clinical data or information to support his opinion." Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583.

In this case, Dr. Springstead's opinion with regard to Plaintiff's inability to work is wholly conclusory, inconsistent with his treatment records and is not supported by the medical evidence of record. Initially, while Plaintiff complained of various pains and impairments for years, at no time prior to July 2002, more than a year after Plaintiff's alleged onset date of May 15, 2001, did Dr. Springstead ever indicate that Plaintiff was permanently incapable of working. In this regard, on two occasions Dr. Springstead gave Plaintiff a note indicating that she was unable to work. (T. 149, 160.) The first occasion was in November 1987, after Plaintiff's surgery for a dislocated hip. (T. 160.) In December 1987, he indicated that Plaintiff would be unable to work for at least another month. (Id.) There are no treatment records after November 1987 until July 1992, at which time Plaintiff was working as a bartender. (T. 159.) On November 13, 1997, Dr. Springstead again gave Plaintiff a note indicating that Plaintiff could not work. (T. 149.) He, however, did not indicate that her inability to work was permanent. Moreover, despite the fact that Dr. Springstead

had treated Plaintiff for years, he failed to indicate in the July 8, 2002, physical capacities evaluation the earliest date the restrictions applied to Plaintiff. (T. 191.)

Additionally, Dr. Springstead's notes mostly consist of Plaintiff's subjective allegations of pain and other limitations. The ALJ found Plaintiff's subjective complaints not to be fully credible, and Plaintiff does not challenge that finding.

Furthermore, the objective findings indicated in Dr. Springstead's office notes are inconsistent with his opinion that Plaintiff could not work.  For instance, in April 2001, Plaintiff's reflexes were active and she had good range of motion of the hip and knee with no weakness.  (T. 141.)  In May 2001, Dr. Springstead noted that Plaintiff needed to "take control of these medications and stop having to take so much." (T. 140.) In August 2001, Plaintiff complained of pain and tenderness in her neck, back and shoulder, but Dr. Springstead indicated no weakness.  (T. 139.)  In February 2002, Plaintiff had a good range of motion with minimal pain and she walked without any external support.  (T. 186.)  In September 2002, Plaintiff had some decrease of motion in her lower back but had good range of motion in her hip and no neurological deficits.  (T. 195.)

Moreover, Dr. Springstead's treatment of Plaintiff generally consisted of prescribed pain medication and occasional injections.  He, however, repeatedly cautioned Plaintiff about taking too much medication.  For example, in November 1995, Dr. Springstead noted that Plaintiff needed to "try and back off of [the medication] some and it will be more effective for her." (T. 154.)  In July 1996, he

9

told Plaintiff that she needed to eventually try and get off the prescription medication and take over the counter medication like Tylenol or Advil. (T. 153.) In June 1998, he again indicated that she needed to "not take as much medication, it would probably work better for her." (T. 148.) In May 2001, Dr. Springstead noted, "I told her she need [sic] to take control of these medications and stop having to take so much." (T. 140.)

Other substantial medical evidence of record also supports the ALJ's rejection of Dr. Springstead's opinion that Plaintiff could not work. For example, on August 10, 2001, Dr. Lamba examined Plaintiff at the request of the Office of Disability Determinations. Dr. Lamba noted Plaintiff's gait was normal and that she did not require an assistive device for ambulation. Plaintiff's grip strength and fine manipulations were normal and there was no evidence of motor deficit in the extremities. (T. 103-06.) Her reflexes were within normal limits. (T. 108.)

Plaintiff's activities also support the ALJ's decision not to credit this opinion. The ALJ noted that while Plaintiff testified that she did very little chores, in January 2002 she moved boxes and in February 2002 she hung a shower curtain. (T. 138.) The ALJ found such activities to be inconsistent with the alleged throbbing pain and limited functioning. (T. 16.) The ALJ also noted that despite Plaintiff's "long history of complaints of pain in multiple joints for many years," she worked as a construction worker in 1996, after her hip surgery, and rode horses in 1997. (T. 15, 151, 153.)

The ALJ articulated reasons for rejecting Dr. Springstead's opinion and these

10

reasons were supported by substantial evidence. The Court finds, therefore, that the ALJ had good cause to reject Dr. Springstead's opinion.

    B.    WHETHER THE ALJ PROPERLY CONSIDERED THE COMBINED EFFECT OF ALL PLAINTIFF'S IMPAIRMENTS.

Plaintiff next contends that the ALJ did not consider the combined effect of all her impairments because he did not determine her knee impairment, carpal tunnel syndrome, depression/anxiety to be severe. She further contends that the ALJ failed to acknowledge her foot numbness and constipation resulting from her medications.

To be sure, the threshold for a finding of severity at step two of the sequential analysis is quite low. McDaniel v. Bowen, 800 F.2d 1026, 1032 (11th Cir. 1986). A claimant need only demonstrate that the claimed impairment exists and that it limits in some way the capacity to work. An impairment is not considered "severe," however, if "it does not significantly limit an individual's physical or mental capacity to perform basic work related functions." 20 C.F.R. § 416.921(a).

Once the ALJ concludes which impairments are deemed severe,

> the ALJ must consider the impairments in combination and determine whether their combined effect renders the claimant disabled. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991)(citing Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985)(citation omitted)). However, the ALJ meets this standard by specifically finding "the claimant not to suffer any impairment, or combination of impairments" sufficiently severe to prevent participation in substantial gainful activity. Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

Holley v. Chater, 931 F. Supp. 840, 850 (S.D. Fla. 1996).

11

In this case, the ALJ's reasons for accepting or rejecting the impairments about which Plaintiff complains are supported by substantial evidence and are consistent with legal standards. First, Plaintiff argues that the ALJ failed to make any findings with regard to Plaintiff's knee problem. In support of this contention, Plaintiff points to a single office visit note dated June 5, 1998, at which time Plaintiff complained of having trouble with her right leg, particularly around her right lateral knee. (T. 148.) Dr. Springstead noted tenderness over the right side of her knee, but no swelling or instability. Dr. Springstead's impression was degenerative disc disease of the lumbar spine. (Id.)

Notably, the ALJ found that Plaintiff had a history of tendinitis of the knee. (T. 13, 154-156, 157.) He found her history of tendinitis to be a severe impairment. (T. 14.) There is no indication in the medical records that Dr. Springstead or any other physician found that Plaintiff had a knee impairment other than tendinitis. As such, Plaintiff's argument with regard to her knee is without merit.

Plaintiff further argues that the ALJ failed to make any finding as to her left carpal tunnel syndrome. She points out that in August 2001 Dr. Lamba opined that her complaints of pain and numbness in her left wrist, hand and fingers were suggestive of carpal tunnel syndrome. (T. 105.) She further points to records of Dr. Springstead dated April to August 2001, during which time Plaintiff complained of numbness of the fingers in her left hand. Dr. Springstead's initial impression was probable carpal tunnel syndrome. He indicated that she should see a neurologist

12

for evaluation. (T. 141.) In May 2001, however, he stated that, "In some respects it doesn't sound like carpal tunnel, it almost sounds like some type of stocking glove anesthesia from a conversion reaction." (T. 140.)

The ALJ acknowledged Plaintiff's complaints of numbness in the fingers of her left hand. (T. 14.) Substantial evidence supports the ALJ's implicit finding that Plaintiff's alleged carpal tunnel syndrome was not severe. An impairment is not considered "severe" if "it does not significantly limit an individual's physical or mental capacity to perform basic work related functions." 20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a). Dr. Lamba indicated that Plaintiff's grip strength and fine manipulations were normal and there was no evidence of motor deficit. (T. 105.) Furthermore, there is no medical evidence suggesting that Plaintiff complained of numbness in her fingers after August 2001. Even when she did complain of such numbness, Dr. Springstead found no apparent weakness and her reflexes were active. (T. 141.) Finally, in July 2002, Dr. Springstead found that Plaintiff could use both her hands repetitively for simple grasping, pushing and pulling and fine finger action. (T. 197.) He did not include carpal tunnel syndrome as a medical reason that he believed caused Plaintiff to be unable to work. (T. 198.) As such, the ALJ did not err in failing to include Plaintiff's carpal tunnel syndrome as a severe impairment.

Next, Plaintiff contends that her depression/anxiety constitutes a severe impairment. The ALJ addressed Plaintiff's psychological complaints at length and

13

specifically found Plaintiff's mental impairment not severe. (T. 14-15.) This finding is also supported by substantial evidence. In support of his finding, the ALJ first noted that Plaintiff made no mention of any mental problems at the administrative hearing. (T. 14.) He also noted that at her psychological evaluation by Dr. Mancari, Plaintiff indicated only physical reasons for her inability to work. (T. 109.)

The ALJ then pointed to the medical evidence. Plaintiff's score on Folstein's Mini-Mental Status Examination indicated no cognitive impairment. Dr. Mancari indicated that Plaintiff's memory functions and verbal abstract reasoning, as well as her impulse control, common sense and social judgment, were within normal limits. Her focused attention and mean calculation skills were well intact. Dr. Mancari opined that Plaintiff's clinical presentation and other information contraindicated any severe depressed mood. He further opined that her complaints were not so severe to warrant an anxiety disorder. Dr. Mancari assessed Plaintiff's GAF at 70. He found very mild and fluctuating functional deficits with regard to Plaintiff's psychological work capabilities. (T. 111.)

The ALJ noted that, "[t]he record established that there have been no limitations in the claimant's activities of daily living attributable to a mental impairment, no limitations in social functioning, no deficiencies of concentration, persistence or pace and no episodes of decompensation." (T. 14-15.) The ALJ therefore did not err in finding Plaintiff's mental condition not severe.

Finally, the ALJ did not err in implicitly finding that Plaintiff's alleged foot

numbness and constipation were not severe. The medical records demonstrate that Plaintiff complained of foot numbness on only two occasions in April and May 2001. (T. 140-41.) There is no medical evidence relating to any complaint of constipation. Furthermore, there is no evidence that either alleged condition impaired her ability to perform basic work functions.

Having properly addressed Plaintiff's complaints, rejecting some and accepting others, the ALJ concluded that Plaintiff suffered from the following severe impairments: a remote right hip fracture, degenerative disc disease of the lumbar spine, cervical spondylosis, and a history of tendinitis. As required by the Eleventh Circuit, the ALJ considered those impairments and their affect on Plaintiff's ability to work. (T.15-17). He expressly opined that Plaintiff "has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations, 20 C.F.R. § 416.920(b). (T. 17.) Ultimately, he concluded that the impairments do not preclude Plaintiff from performing the requirements of light work and, therefore, do not render her disabled under the Act. As such, the ALJ met the Eleventh Circuit requirement.

C.   THE ALJ ERRED IN APPLYING THE GRIDS.

Plaintiff's final contention is that the ALJ erred in applying the grids. Plaintiff contends that the ALJ should have elicited the testimony of a vocational expert in light of her impairments.

The ALJ found that Plaintiff could perform the demands of a full range of light

15

work.  Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §416.967(b).

"[E]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) (citation omitted). Exertional limitations are those that relate to the ability to sit, stand, walk, lift, carry, push and pull. Id. (citing Social Security Ruling 96-4.)

Non-exertional limitations are those that affect a claimant's "ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing, or pulling...." 20 C.F.R. § 416.969a(a). Generally, when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert. See MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).  The court in Passoulos v. Sullivan, 976 F.2d 642, 648 (11th Cir.

16

1992), however, recognized that the Grids may be used in lieu of vocational expert testimony on specific jobs if none of the claimant's non-exertional impairments are so severe as to prevent a full range of employment at the designated level. See Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987).

To the extent that Plaintiff's claim that the ALJ erred in applying the grids relies on the exertional and non-exertional limitations identified by Dr. Springstead, such as limitations in standing and walking, bending, reaching, and restrictions regarding unprotected heights and moving machinery, her claim must be rejected. The Court has already found that the ALJ did not err in rejecting Dr. Springstead's opinion.

As for any claim related to limitations in her manual dexterity and grip strength, the Court previously found that the ALJ did not err in his non-severity finding with regard to Plaintiff's alleged carpal tunnel syndrome. The Court also notes that Dr. Springstead did not find any limitations with regard to Plaintiff's hands and he indicated that she could use her hands for grasping, pushing, pulling and fine finger action. (T. 190.) Similarly, the Court has found that the ALJ did not err with regard to his finding that Plaintiff's mental impairment was not severe. As such, application of the grids was not precluded by these alleged impairments.

Any limitations with regard to bending and stooping also did not prevent application of the grids. Specifically, both State agency physicians and Dr. Springstead found that Plaintiff could bend/stoop occasionally. (T. 132, 178, 190.) These limitations are consistent with light work which requires only occasional

17

bending and stooping.  See Social Security Ruling 83-10 and 83-14.

With regard to pain, the ALJ found Plaintiff's complaints not to be fully credible.  The ALJ explained that, "Neither the severity nor the extent are supported by the objective medical evidence of record."  (T. 16.)  He further noted that Plaintiff's testimony and complaints of throbbing pain and limited functioning were inconsistent with her activities.  For example, the ALJ pointed to the fact that Plaintiff had moved boxes in January 2002 and had hung a shower curtain in February 2002.  he also noted that she previously worked as a construction worker, worked in a restaurant and rode horses.  (T. 15.)  Moreover, the ALJ found that the record indicated that Plaintiff's symptoms were reasonably managed with medication.  (T. 16.)

Finally, the Court notes that the ALJ's residual functional capacity finding with regard to Plaintiff is consistent with that of a State agency physician who found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit 6 hours and had no limitations in pushing or pulling. (T. 131.)  The State agency physician also found only occasional postural limitations that are consistent with light work and no environmental limitations.  (T. 130-37.)  As such, the ALJ did not err in applying the grids.

CONCLUSION

The ALJ had good cause to reject the opinion of Plaintiff's treating physician. Furthermore, the ALJ properly rejected certain of Plaintiff's complaints as non-severe and considered Plaintiff's impairments singularly and in combination.  Finally, the ALJ did not err in his application of the grids.  The Undersigned therefore AFFIRMS the decision of the Commissioner.  The Court ENTERS judgment in favor of the Defendant and DIRECTS the Clerk to enter judgment pursuant to Rule 58.

_____
MARY S. SCRIVEN
United States Magistrate Judge

DATED: September 23, 2005